IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0314-WJM-STV

ROCKY MOUNTAIN WILD, a Colorado non-profit corporation,

    Plaintiffs,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency, and
UNITED STATES DEPARTMENT OF INTERIOR, a federal agency,

    Defendants.

## ORDER GRANTING PARTIAL MOTION TO DISMISS

Plaintiff Rocky Mountain Wild alleges that Defendants United States Bureau of Land Management and United States Department of the Interior (together, "BLM" or "Defendants") failed to respond properly to Rocky Mountain Wild's October 2017 request for agency records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Rocky Mountain Wild further claims that BLM's improper handling of the request is consistent with alleged previous instances of mishandling FOIA requests, particularly requests for records related to oil and gas leasing decisions, which Rocky Mountain Wild frequently submits. Rocky Mountain Wild thus seeks an injunction remedying the alleged deficiencies in BLM's response to the October 2017 request, as well as an injunction against BLM's alleged pattern or practice of deficient FOIA responses.

Currently before the Court is BLM's Partial Motion to Dismiss. (ECF No. 13.) BLM asks the Court to dismiss all claims except the core claim regarding whether BLM properly responded to Rocky Mountain Wild's October 2017 FOIA request. BLM argues

that Rocky Mountain Wild lacks standing to bring the challenged claims, and further argues that Rocky Mountain Wild has failed to state a claim for relief as to those claims.

For the reasons explained below, the Court agrees in part with BLM's standing argument, and agrees that Rocky Mountain Wild otherwise fails to state a claim. The Court will therefore grant the motion.

## I. LEGAL STANDARD

### A. Rule 12(b)(1)

BLM's standing argument falls under Rule 12(b)(1), which permits challenges to subject matter jurisdiction. "[Federal] [d]istrict courts have limited subject matter jurisdiction and may [only] hear cases when empowered to do so by the Constitution and by act of Congress." *Randil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) (internal quotation marks omitted). "A court lacking jurisdiction cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) motions generally take one of two forms: a facial attack or a factual attack. Here, BLM attaches certain extra-record documents and so brings, in part, a factual attack. Given this, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Furthermore, the Court's reference to evidence beyond the pleadings will not convert the motion to one under Rules 56 or 12(b)(6), unless the jurisdictional question is intertwined with the merits of the case. *Id.* Here, as will become clear below, the jurisdictional question is independent from the merits.

2

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND & STATUTORY STRUCTURE

### A. The FOIA Request

Rocky Mountain Wild submitted a FOIA request to BLM on October 19, 2017, seeking "all agency records involving [BLM's] proposed March 2018 oil and gas leasing" of specified parcels. (ECF No. 1-1.) Under FOIA, Rocky Mountain Wild's request triggered a 20-working-day clock during which BLM was required to "determine . . . whether to comply with such request," at which point BLM was further required to "immediately notify [Rocky Mountain Wild] of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). However, a failure to make such a determination

within 20 working days may be "excused for an additional 10 days" if "unusual circumstances apply . . . and the agency provided a timely written notice to the requester."  *Id.* § 552(a)(4)(A)(viii)(II)(aa); *see also* 43 C.F.R. § 2.19.  The same day that BLM received Rocky Mountain Wild's request, a BLM employee e-mailed Rocky Mountain Wild to explain that it was invoking the 10-day extension "because we need to search for and collect responsive records from a field office separate from the office that is processing your request."  (ECF No. 13-1 at 2.)

By letter dated December 5, 2017 (the thirty-first working day after Rocky Mountain Wild submitted its request), BLM responded to Rocky Mountain Wild with what it characterized as "installment 1 to your [FOIA] request."  (ECF No. 1-2.) Installment 1 comprised 140 pages.  (*Id.*)  BLM announced that it was "still reviewing additional records that are responsive to your request and will follow with further installments."  (*Id.*)

By letter dated December 28, 2017, BLM transmitted "installment 2," comprising 1,595 pages.  (ECF No. 1-3.)  BLM again announced that it was "still reviewing additional records that are responsive to your request and will follow with further installments."  (*Id.*)

**B.     The Original Complaint**

Rocky Mountain Wild filed this lawsuit on February 8, 2018.  (ECF No. 1.)  In that original complaint, Rocky Mountain Wild asserted three claims for relief.

The first claim for relief alleged that BLM had violated FOIA "by failing to provide a lawful determination and response . . . within the statutory [20-day or 30-day] period." (*Id.* ¶ 33; *see also id.* ¶ 26.)  The first claim for relief also pleaded that BLM failed to conduct a lawful search for responsive records, and that BLM continues to violate FOIA

4

by withholding agency records responsive to Rocky Mountain Wild's request and not subject to any FOIA exemption. (ECF No. 1 ¶¶ 34–35.)

Rocky Mountain Wild's second claim for relief alleged that BLM's conduct is such that it merits referral to special counsel under 5 U.S.C. § 552(a)(4)(F) for investigation into wrongdoing. (*Id.* ¶¶ 38–39.) The Court will discuss this remedy further in Part III.B, below.

Rocky Mountain Wild's third claim for relief alleged "a pattern and [*sic*] practice of not complying with FOIA's statutory requirements in a timely manner." (*Id.* ¶ 41.) Rocky Mountain Wild also alleged a pattern or practice of withholding agency records through intentional delay, and withholding records that are not subject to any exemption. (*Id.* ¶¶ 42–43.)

## C. Final Determination

By letter bearing no date, but which Rocky Mountain Wild received on March 6, 2018, BLM informed Rocky Mountain Wild that it had "complete[d] [its] response" to the FOIA request with an additional 346 pages being disclosed in full and 97 pages being disclosed in part. (ECF No. 12-2 at 1.) It further announced that it was withholding 63 pages in full under specific FOIA exemptions. (*Id.*)

## D. The Amended Complaint

With the Court's leave, Rocky Mountain Wild filed an amended complaint on April 3, 2018. ("Amended Complaint," ECF No. 12-1.) The Amended Complaint again alleges three claims for relief.

The first claim for relief again alleges "fail[ure] to provide a lawful determination and response . . . within the statutory [20-day or 30-day] period," that BLM failed to conduct a lawful search for responsive records, and that BLM continues to violate FOIA

5

by withholding agency records responsive to Rocky Mountain Wild's request and not subject to any FOIA exemption. (*Id.* ¶¶ 36–38.)

The second claim for relief again requests referral to special counsel, but alternatively characterizes itself "as a statutory remedy" rather than a claim for relief. (*Id.* ¶¶ 40–43.)

The third claim for relief re-pleads the pattern-or-practice allegations based on failure to provide a determination in response within the statutory time frame, illegally withholding responsive records through delay, and also through refusal to produce despite lack of a FOIA exemption. (*Id.* ¶¶ 45–48.)

### III. ANALYSIS

BLM attacks every claim in the Amended Complaint save for the portions of the first claim alleging failure to conduct a lawful search and withholding of responsive records not subject to any exemption. (ECF No. 13 at 4–15 & n.4.) The Court will discuss the challenged claims, or portions thereof, in order.

**A.     First Claim: Statutory Deadlines**

BLM contends that a part of Rocky Mountain Wild's first claim for relief is moot in light of BLM's final determination and disclosure in March 2018. (ECF No. 13 at 4–6.)

The relevant portion of Rocky Mountain Wild's first claim asserts BLM's "failure to provide a lawful determination and response to Plaintiff's October 19, 2017 request for agency records within the statutory period." (ECF No. 12-1 ¶ 36.) Here, "response to" is ambiguous. The Court would prefer to presume that "response to" refers to an agency's duty to "immediately notify" a FOIA requester of the agency's determination and reasoning. 5 U.S.C. § 552(a)(6)(A)(i). And, more particularly, the Court would prefer to presume Rocky Mountain Wild does *not* mean to imply that an agency has a

duty to complete its disclosure of responsive records "within the statutory period." The Court prefers these presumptions because it would like to think that Rocky Mountain Wild would not again waste the Court's and parties' time with a claim it lost before the undersigned in previous litigation. *See Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 2016 WL 362459, at *11 (D. Colo. Jan. 29, 2016) (explaining that 5 U.S.C. § 552(a)(6)(A)(i) only establishes deadlines for determination and notification, not for disclosure, contrary to Rocky Mountain Wild's argument). However, Rocky Mountain Wild's response brief makes clear that it continues to assert a non-existent obligation to disclose documents within 20 days. (*See* Part III.C.2.b, below.) Nonetheless, the Court will construe "response to" as a reference to the "immediately notify" obligation because that is the only construction that leaves something to be analyzed, as opposed to requiring dismissal.

Rocky Mountain Wild cannot deny that BLM notified Rocky Mountain Wild of its final determination and explanation no later than March 6, 2018. Rocky Mountain Wild nonetheless asserts three arguments that this portion of its first claim is not moot.

First, Rocky Mountain Wild argues that it needs this portion of its first claim "to establish constructive exhaustion." (ECF No. 14 at 7.) By "constructive exhaustion," Rocky Mountain Wild refers to the statutory structure by which a FOIA requester gains a right to go directly to federal court, without administrative exhaustion, if the agency does not respond within the statutory deadlines. 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a [FOIA] request to any agency . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."). But BLM does not argue that Rocky Mountain Wild failed to exhaust administrative remedies, and in any event an

7

*allegation* that establishes constructive exhaustion is not a *claim for relief*, any more than an allegation to establish federal subject matter jurisdiction is a claim for relief.

Second, Rocky Mountain Wild briefly argues that "BLM does not attempt to meet the heavy evidentiary burden imposed by the mootness doctrine," and then cites *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 193 (2000) ("*Laidlaw*"). (ECF No. 14 at 8.) The cited page from *Laidlaw* mentions the mootness exception known as "voluntary cessation." If a defendant voluntarily ceases a challenged action, the action remains a justiciable controversy unless the defendant persuades the Court of two conditions: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks and citations omitted; alterations incorporated).

Rocky Mountain Wild has not persuaded the Court that BLM's final determination was "voluntary cessation" within the meaning of this mootness exception. Rather, BLM went through the normal FOIA process (albeit more slowly than Rocky Mountain Wild would prefer), issued a final determination, and closed the FOIA request. If this Court later determines that BLM improperly withheld documents, it would mean that BLM's "final determination" was incomplete, but not any less final from the agency's perspective. FOIA requests are not deemed open indefinitely until a court approves the agency's response. *Cf. Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) ("In order for its response to be 'complete,' an agency need not . . . obtain a judicial declaration that its search efforts were adequate or that its withholding determinations were warranted.").

8

Third, Rocky Mountain Wild emphasizes its claim that BLM failed to make a "*lawful* determination and response . . . within the statutory period." (ECF No. 12-1 ¶ 36 (emphasis added).) Rocky Mountain Wild does not explain what it means by "lawful." If it refers to a duty to produce documents within a certain time, again, no such duty exists. *Rocky Mountain Wild*, 2016 WL 362459, at *11. If it means failure to provide an explanation for disclosures and withholdings that a court would uphold, the claim becomes nonsensical. Certainly Rocky Mountain Wild may challenge BLM's disclosures and withholdings, as it has done in the portions of its first claim that BLM does *not* seek to dismiss. But linking this to a duty to explain those disclosures and withholdings "within the statutory period" seems to be an argument that the agency has a 20- or 30-day deadline to produce an unchallengeable ("lawful") explanation. Surely Rocky Mountain Wild would not admit that any agency determination is unchallengeable on the agency's own say-so, whether produced within the deadline or not. So the adjective "lawful" does nothing to rescue this claim.

Given the foregoing, he Court agrees with the United States District Court for the District of the District of Columbia: "Once an agency has made its final determination under § 552(a)(6)(A), the *timeliness* of that determination is no longer a live controversy fit for judicial review." *Muttitt*, 926 F. Supp. 2d at 296 (emphasis in original). The Court will grant this portion of BLM's motion.

**B.     Second Claim: Special Counsel**

BLM argues that Rocky Mountain Wild's second claim for relief is a request for a remedy only and cannot be pleaded as a cause of action. (ECF No. 13 at 6–7.)

Rocky Mountain Wild's second claim asks the Court to refer BLM employees to "Special Counsel" per 5 U.S.C. § 552(a)(4)(F)(i):

9

> Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel[1] shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. The Special Counsel, after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Special Counsel recommends.

As this language makes clear, the Court must proceed through at least two steps before considering such a referral: (1) ordering production of improperly withheld records, which the Court may do under 5 U.S.C. § 552(a)(4)(B); and (2) awarding attorneys' fees against the agency, which the Court may do under 5 U.S.C. § 552(a)(4)(E)(i) if the requester "substantially prevail[s]" in the lawsuit.

In the federal system, whether to award prevailing party attorneys' fees is a question nearly always reserved until after judgment. Thus, the Special Counsel referral is also something that, in nearly every case, may not be considered until after judgment. A cause of action that cannot be resolved until after judgment is essentially a contradiction in terms. The Court accordingly agrees with BLM that a request for a Special Counsel referral is a remedy, not a cause of action. Rocky Mountain Wild has alternatively pleaded this request as a remedy. (ECF No. 12-1 ¶ 43; *id.* at 16, ¶ F.) The Court will therefore dismiss Rocky Mountain Wild's second claim.

---

[1] FOIA does not explicitly say as much, but "Special Counsel" almost certainly refers to the Office of Special Counsel, whose enabling legislation is codified later in Title 5. *See* 5 U.S.C. §§ 1211–19.

**C.    Third Claim: Pattern or Practice**

BLM argues Rocky Mountain Wild lacks standing to assert, or at least fails to plausibly state a claim for, its third claim for relief, which alleges a pattern or practice of FOIA violations. (ECF No. 13 at 7–15.)

Thus far, it appears that the Ninth and D.C. Circuits are the only circuits to recognize a FOIA pattern-or-practice claim, *i.e.*, a claim that an agency should be enjoined from a policy that will likely lead it to withhold documents unlawfully when it receives future requests from the plaintiff. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490–94 (D.C. Cir. 1988) (authorizing FOIA pattern-or-practice claim); *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982) (same). The Tenth Circuit has addressed the matter only indirectly and nonprecedentially. *Cf. Liverman v. OIG*, 139 F. App'x 942, 944–45 (10th Cir. 2005) (acknowledging a FOIA plaintiff's argument for a pattern-or-practice claim, and, without ruling on whether such a claim exists, finding the record insufficient to support it).

BLM does not ask this Court to hold that the pattern-or-practice cause of action does *not* exist. Rather, BLM assumes for argument's sake that the cause of action exists under the contours established by the Ninth and D.C. Circuits, and that Rocky Mountain Wild lacks standing or fails to state a claim under those contours. The Court will therefore also assume without deciding that the cause of action exists under those contours.

1.    Standing

Standing to challenge a pattern-or-practice claim requires, among other things, a "substantial risk" that the agency will invoke the challenged practice against the plaintiff in response to a future or still-pending FOIA request. *Smith v. U.S. Immigration &*

11

*Customs Enf't*, 249 F. Supp. 3d 1203, 1209 (D. Colo. 2017) (internal quotation marks omitted). Rocky Mountain Wild has adequately pleaded that it will continue to submit FOIA requests—it submitted two similar requests during the briefing period. (*See* ECF No. 14 at 13–14.)[2] Under authority from the United States District Court for the District of the District of Columbia, on whose decisions this Court has drawn for guidance in these matters, this is often enough to plead a sufficient possibility of future injury. *See Smith*, 249 F. Supp. 3d at 1209 (summarizing relevant authority). This assumes, of course, that the alleged pattern(s) or practice(s) exists. The Court may assume as much for standing purposes, but that does not mean that the plaintiff has pleaded the alleged pattern(s) or practice(s) with sufficient plausibility to withstand a Rule 12(b)(6) challenge. The Court therefore turns to that analysis.

    2.    <u>Failure to State a Claim</u>

Rocky Mountain Wild's allegations of patterns and practices are somewhat unfocused. (*See* ECF No. 12-1 ¶¶ 30, 32, 46–48.) BLM reduces Rocky Mountain Wild's allegations into two categories: (1) allegations on information and belief of purposeful delay through intentionally allocating resources away from FOIA matters, and (2) allegations of intentional delay of FOIA requests related to oil and gas leasing until after public comment periods on the lease decisions are closed, for purposes of frustrating the public's ability to participate in the comment period on a more informed basis. (ECF No. 13 at 10–13.)

---

[2] BLM claims that one of these two requests was not mentioned in the Amended Complaint, and BLM therefore accuses Rocky Mountain Wild of attempting to implicitly amend the complaint again through its response brief. (ECF No. 18 at 7–8.) But when subject matter jurisdiction is at stake, the Court may consider matters outside the pleadings. (*See* Part I.A, above.) BLM's attempt to prevent consideration of both subsequent requests is therefore meritless.

Rocky Mountain Wild does not argue that BLM's two categories improperly distill Rocky Mountain Wild's pattern-or-practice claims. Rather, Rocky Mountain Wild argues that BLM missed a third category, namely, "the allegation that BLM wrongfully 'withheld' records through delay and by failing to carry out its FOIA duties in accordance with FOIA deadlines." (ECF No. 14 at 13 (purportedly quoting ECF No. 12-1 ¶ 36, although the word "withheld" does not appear there).) In terms of a claim for forward-looking relief, this assertion makes sense only by assuming that Rocky Mountain Wild means to say that the Court should look at the alleged FOIA violation in this case as one factor to consider when deciding whether Rocky Mountain Wild has pleaded pattern-or-practice relief against expected future violations. Under that assumption, the Court agrees, but does not see how this already-accomplished purported violation represents its own pattern or practice, separate from the two categories BLM describes. Accordingly, the Court will analyze the propriety of Rocky Mountain Wild's pattern-or-practice claims with reference to those two categories.

        a.    *Intentional Delay through Intentional Misallocation of Resources*

Rocky Mountain Wild appears to rest on the existence of four other cases with apparently similar allegations. (ECF No. 12-1 ¶ 32.) Two of these cases were lawsuits by Rocky Mountain Wild against the United States Forest Service, not BLM. Rocky Mountain Wild does not explain how allegations against the Forest Service (part of the Department of Agriculture) relate to BLM.

As to the other two cases, in which BLM *is* the defendant, Rocky Mountain Wild nowhere explains how these cases support the allegation that BLM purposefully allocates resources away from FOIA activities. (*See* ECF No. 14 at 15.) The cases are *Rocky Mountain Wild, Inc. v. United States Bureau of Land Management et al.*, Civil

Action No. 17-cv-636-PAB-SKC (D. Colo., filed Mar. 10, 2017), and *San Juan Citizens Alliance, Inc. v. Bureau of Land Management*, Civil Action No. 14-cv-2784-RPM (filed Oct. 10, 2014). Although the Court is not required to do Rocky Mountain Wild's work for it, the Court has reviewed the pleadings in both cases to see if they provide any support for Rocky Mountain Wild's argument. They do not. In the first case, over which U.S. District Judge Philip A. Brimmer presides, the pleadings say nothing about a policy of misallocating resources. In the second case, over which Senior U.S. District Judge Richard P. Matsch presides, such allegations exist but are specific to an alleged agreement between BLM's Farmington, New Mexico, field office and the New Mexico Oil and Gas Association. Rocky Mountain Wild does not explain how that allegation has any relevance to energy leasing in Colorado.

Accordingly, Rocky Mountain Wild has failed to overcome BLM's Rule 12(b)(6) challenge as to this alleged pattern or practice. It will be dismissed.

      b.    *Delay Calibrated to Outlast Public Comment Periods*

The only factual substantiation Rocky Mountain Wild provides for its pattern-or-practice claim based on an alleged intent to thwart better-informed participation in public comment periods is Judge Brimmer's case, discussed above, as well as allegations about the timing of certain FOIA requests as compared to public comment periods. Judge Brimmer's case contains no allegations approaching this sort of alleged pattern or practice. As for allegations regarding timing, they reveal Rocky Mountain Wild's continuing misconception that FOIA requires disclosure of documents within 20 or 30 days. (*See* ECF No. 14 at 13–14 & nn.6–7 (arguing that BLM "violat[ed] FOIA deadlines" by "fail[ing] to produce responsive records," and explaining how records produced within 20 days would have permitted Rocky Mountain Wild to provide

14

informed comments during a 30-day comment period).) FOIA imposes no such deadlines. To repeat the undersigned's previous ruling from January 2016:

> An agency's requirement under the statute to "determine...whether to comply with [a FOIA] request," 5 U.S.C. § 552(a)(6)(A)(i), is not a requirement to produce responsive records at the same time. "Under the statutory scheme, a distinction exists between a 'determination' and subsequent production." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013). Moreover, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.* at 189; *see also* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a [FOIA] request to any agency . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."). Thus, a failure to make a "determination" within 20 days—even a repeated failure— already contains a statutory remedy: the right to sue.

*Rocky Mountain Wild*, 2016 WL 362459, at *11.[3] Accordingly, the legal basis for this version of Rocky Mountain Wild's pattern-or-practice claim is as absent now as it was three years ago. Rocky Mountain Wild accordingly fails to state a claim for a pattern-or-practice violation.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Partial Motion to Dismiss (ECF No. 13) is GRANTED;

2. U.S. Magistrate Judge Scott T. Varholak shall determine the effect, if any, of the current partial government shutdown on Defendants' ability to proceed with this case and may enter appropriate scheduling or other orders; and

---

[3] The only portion of FOIA that addresses timing of disclosure is a command that the agency make properly requested records "promptly available." 5 U.S.C. § 552(a)(3)(A). Rocky Mountain Wild does not invoke this provision, nor does it give any indication that it could successfully base a claim on this provision.

15

3. Assuming Defendants may currently proceed with the lawsuit, or at the time that they may, the parties are strongly encouraged to consider the utility of requesting a settlement conference before the Magistrate Judge, considering the relatively narrow scope of the remaining dispute.

Dated this 16th day of January, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge