**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-0314-WJM-STV

ROCKY MOUNTAIN WILD, a Colorado non-profit corporation,

    Plaintiff,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, a federal agency, and
UNITED STATES DEPARTMENT OF INTERIOR, a federal agency,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' RENEWED MOTION
FOR SUMMARY JUDGMENT**

---

Plaintiff Rocky Mountain Wild alleges that Defendants United States Bureau of

Land Management and United States Department of the Interior (together, "BLM") failed

to respond properly to Rocky Mountain Wild's October 2017 request for agency records

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking information

about certain parcels that BLM was (at the time of the FOIA request) preparing to offer

for oil and gas leasing in March 2018.  (ECF No. 12-1.)

This matter is before the Court on BLM's Renewed Motion for Summary

Judgment ("Motion"), filed on May 8, 2020.  (ECF No. 44.)  For the reasons explained

below, the Court grants the Motion.

## I.  LEGAL STANDARD

"FOIA actions are typically decided on motions for summary judgment."  *Info.*

*Network for Responsible Mining v. BLM*, 611 F. Supp. 2d 1178, 1182 (D. Colo. 2009).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.  BACKGROUND[1]

At some point on or before October 19, 2017, Rocky Mountain Wild learned that BLM planned to offer certain oil and gas leases in Colorado beginning in March 2018. (ECF No. 41 at 7.)  On October 19, 2017, Rocky Mountain Wild submitted a FOIA request to BLM's Colorado state office.  (*Id.*)  The "RE:" line of that request reads as follows:

> Freedom of Information Act Request for all agency records involving the proposed March 2018 oil and gas leasing of parcels in and around occupied Gunnison sage-grouse habitat (Parcels 7981, 7982, 7983, 7984, 7985, and 7986) and within the Gypsum Valley Area of Critical Environmental Concern ("ACEC") (Parcel 7987).

(ECF No. 35-1 at 35.)  The request then states that Rocky Mountain Wild seeks "copies of all agency records created or obtained for the purposes of preparing and implementing the March 2018 offering of lease sale parcels 7981, 7982, 7983, 7984, 7985, 7986 and 7987."[2]  (*Id.*)

Between October and November 2017 and June 2019, BLM conducted a number of searches for documents responsive to Rocky Mountain Wild's FOIA request

---

[1]  The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2]  The Court will refer to the numbered parcels mentioned in Rocky Mountain Wild's FOIA request as the "Proposed Parcels."

(the "Prior Searches").  (ECF No. 44 at 5, ¶ 17.)  Details regarding those searches are discussed in the Court's March 23, 2020 order (ECF No. 41), and are incorporated herein.  It is noteworthy, however, that BLM's search terms did not include the parcel numbers for certain parcels that were considered by BLM for leasing in March 2018 but were not among the Proposed Parcels (and therefore not listed in Rocky Mountain Wild's FOIA request).  (ECF No. 35 at 15, ¶ 88; ECF No. 41 at 24.)

## A.    The Prior Summary Judgment Order

On July 19 and August 20, 2019, the parties filed cross motions for summary judgment relating to the adequacy of BLM's search for records responsive to Rocky Mountain Wild's FOIA request.  (ECF Nos. 35, 37.)  On March 23, 2020, the Court granted in part and denied in part BLM's Motion for Summary Judgment and denied Rocky Mountain Wild's Cross Motion for Summary Judgment or in the Alternative for a Stay of Briefing and Leave to Carry Out Rule 56(d) Discovery (the "Prior Summary Judgment Order").  (ECF No. 41.)

In particular, the Court denied in part BLM's Motion for Summary Judgment on the following grounds:

> Rocky Mountain Wild's enumeration of specific parcels should have been liberally construed to reach all of the parcels considered for the March 2018 lease sale.  There is no reasonable basis to think that Rocky Mountain Wild was genuinely interested in only a subset of parcels considered for that lease sale, to the exclusion of any others.  Rather, Rocky Mountain Wild made plain its interest in the effect that the March 2018 lease sale—and not just a portion of that lease sale—may have on Gunnison sage-grouse and ACECs in the proposed lease sale area.  Accordingly, the Court finds that BLM's search was deficient to the extent BLM excluded documents about parcels considered for the March 2018 lease sale but not listed in Rocky Mountain

3

> Wild's FOIA request.[3]  BLM is not entitled to summary
> judgment on this aspect of the case.

(ECF No. 41 at 24–25.)  The Court then directed BLM to conduct a new search to cure

the deficiency:

> BLM shall conduct a new search for records existing
> between January 1, 2017, and November 3, 2017, regarding
> parcels considered for the March 2018 lease sale, about
> which BLM has not already conducted a search.  BLM shall
> conduct this search and produce responsive documents on
> a schedule that permits it to file a new summary judgment
> motion (as to this search alone) no later than April 24, 2020.

(*Id.* at 35.)

## B.    BLM's Subsequent Search

After the Court issued the Prior Summary Judgment Order, BLM's Colorado

FOIA Officer, Laura Garcia-Hinojosa, worked with various BLM employees who had

"comprehensive knowledge of the March 2018 lease sale and were the agency

employees most familiar with the nature, scope, and location of documents relating to

this lease sale" to design a new search that would comply with the Court's directive.

(ECF No. 44 at 3, ¶¶ 2, 4.)  In particular, she consulted with: (1) Ryan Joyner, the team

lead for the March 2018 lease sale at the Tres Rios Field Office; (2) Peter Cowan, the

Acting Branch Chief and FOIA Coordinator for the Colorado State Branch of Fluid

Minerals (the "State Office"); and (3) Rebecca Baca, the State Office's team lead for the

March 2018 lease sale.  (*Id.* at 3, ¶ 3.)

Ms. Garcia-Hinojosa then undertook steps to determine which parcels had been

---

[3]  Rocky Mountain Wild previously represented that those parcels are 6434, 7387, 7980, and 7989.  (ECF No. 36 at 25.)  However, the parties now agree that parcel 7989 was not considered for the March 2018 lease sale.  (ECF No. 44 at 5, ¶ 15; ECF No. 45 at 3 n.2.)

"considered" for the March 2018 lease but had not been previously searched in response to Rocky Mountain Wild's FOIA request.  (*Id.* at 4, ¶ 6.)  After an extensive search, she concluded that there were only three parcels that were considered for the March 2018 lease sale and about which BLM had not previously conducted a document search: Parcel ID numbers 6434, 7387, 7890 (collectively, the "New Parcels").  (*Id.* at 4–5, ¶¶ 6–15.)

       1.   <u>Review of Documents Captured by BLM's Prior Searches</u>

Ms. Garcia-Hinojosa next conducted a review of the records that she had already collected during the Prior Searches.[4]  (*Id.* at 5, ¶¶ 16–17.)  In the Prior Searches, Ms. Garcia-Hinojosa had asked 30 different custodians to search for 13 different search terms to capture responsive documents, including the terms "March 2018 Lease Sale," "March 2018," "March sale," "TFRO lease sale," "Tres Rios Lease Sale," "lease sale" with "March," as well as the Proposed Parcels identified in Rocky Mountain Wild's FOIA request.  (*Id.* at 6, ¶ 19.)

Ms. Garcia-Hinojosa's review demonstrated that BLM had already retrieved and produced a significant amount of responsive records relating to the New Parcels.  (*Id.* at 6–7, ¶¶ 20, 22.)  She determined that the Proposed Parcels and the New Parcels were often discussed in tandem and that it was "extremely rare for documents to reflect *only* [the New Parcels], without including the other specified search terms as well."  (*Id.* at 6, ¶ 21 (emphasis in original).)  As a result, Ms. Garcia-Hinojosa concluded that the Prior Searches "had likely already captured nearly all of [BLM's] responsive material relating

---

    [4]  Those searches had included searches of personal electronic files, shared electronic files, paper files, and e-mails.  (ECF No. 44 at 6, ¶ 18.)

to [the New Parcels]."  (*Id.* at 7, ¶ 23.)

Nonetheless, Ms. Garcia-Hinojosa searched once again a folder containing materials that were retrieved during the Prior Searches that BLM had previously deemed unresponsive to Rocky Mountain Wild's FOIA request and were not produced. (*Id.* at 7, ¶ 24.)

        2.    <u>Search and Review of Documents Not Captured by the Prior Searches</u>

Ms. Garcia-Hinojosa then conducted a new search for documents relating to the New Parcels.  (*Id.* at 5, 7, ¶¶ 16, 26.)  She tasked the same 30 custodians who participated in the Prior Searches to now search their personal electronic drives, shared drives, e-mails, and papers for documents reflecting the New Parcels that existed between January 1, 2017 and November 3, 2017.[5]  (*Id.* at 8–10, ¶¶ 27, 32–34.)

With regard to the e-mail searches, she asked the custodians to search for records that contained any of the New Parcels but did not include any of the terms from the Prior Searches (thereby excluding documents that would have been captured by BLM's prior searches).  (*Id.* at 10, ¶¶ 34–38.)

Ms. Garcia-Hinojosa then reviewed: (1) her own, previously collected records; and (2) the new documents collected from the 30 custodians' new searches, to determine whether any of these documents had not previously been produced.  (*Id.* at 11–12, ¶ 44.)  In total, she identified 37 pages of materials that had not been previously

---

[5] Eight of these individuals had left BLM; for these individuals, Ms. Garcia-Hinojosa submitted a request to the Department of Interior's E-mail Enterprise Records and Document Management System, requesting that the former employees' e-mail accounts be searched for any of the New Parcels from January 1, 2017 through November 3, 2017.  (ECF No. 44 at 9, ¶¶ 30–31.)

produced.  (*Id.* at 12, ¶ 45.)

### 3.   Searches of Gregory Shoop and Joseph Manning's Records

Ms. Garcia-Hinojosa consulted with Mr. Joyner, Mr. Cowan, and Ms. Baca about every individual identified in the 37 pages of responsive material who had not previously been designated as a custodian, and she determined it was unlikely that any of these individuals had any records that had not already been collected.  (*Id.* at 12, ¶¶ 46–47.) She also determined that there were no additional custodians who were likely to have responsive materials.  (*Id.* at 9, ¶¶ 28–29.)

Nonetheless, Ms. Garcia-Hinojosa decided to task Gregory Shoop, the Acting BLM Colorado State Director at the time of the March 2018 lease sale, and Joseph Manning, the Assistant Field Manager over renewable resources at the time of the March 2018 lease sale, to search their personal electronic files, shared electronic files, hard copy files, and e-mails for documents reflecting the New Parcels that existed between January 1, 2017 and November 3, 2017.  (*Id.* at 12, ¶¶ 48–49.)  The responsive records returned by Mr. Shoop and Mr. Manning were entirely duplicative of the records that Ms. Garcia-Hinojosa had already collected.  (*Id.* at 13, ¶ 50.)

Neither Mr. Shoop nor Mr. Manning participated in the Prior Searches.  (ECF No. 45 at 6, ¶ C.)

### 4.   BLM's Document Production

Ms. Garcia-Hinojosa then worked with the Department of the Interior's Solicitor's Office to review the 37 pages of responsive documents for any materials that were exempt from disclosure under the FOIA exemptions.  (ECF No. 44 at 13, ¶ 51.)  After determining that none of the material was exempt, the BLM produced these pages in

full to Rocky Mountain Wild on May 7, 2020.  (*Id.* at 13, ¶¶ 51–52.)

## C.    The Instant Motion

On May 8, 2020, BLM filed the Motion.  (ECF No. 44.)  Rocky Mountain Wild responded on May 29, 2020 (ECF No. 45), and BLM replied on June 14, 2020 (ECF No. 46).

## III.  ANALYSIS

## A.    FOIA

FOIA was enacted to enable the public to examine government records.  *See Campaign for Responsible Transplantation v. F.D.A.*, 511 F.3d 187, 190 (D.C. Cir. 2007) ("FOIA is a disclosure statute enacted to facilitate public access to Government documents." (internal quotation marks omitted)).  The general rule under FOIA is that a person is entitled to copies of a federal agency's records upon making a request that "reasonably describes such records" and that complies with required procedures for such requests.  5 U.S.C. § 552(a)(3)(A)(i).

A FOIA requester must "reasonably describe[]" the records sought, *id.*, and the responding agency "may appropriately refrain from disclosing" materials that are "outside the scope of [the] request."  *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1233 n.6 (10th Cir. 2007).  Nonetheless, Congress enacted the "reasonably describes" language specifically to replace a prior statutory standard ("request for identifiable records") that agencies had been using to justify withholding records not requested with specificity.  *Truitt v. Dep't of State*, 897 F.2d 540, 544 & nn.26–27 (D.C. Cir. 1990).  "Reasonably describes" was therefore intended to "'make[] explicit the liberal standard

for identification that Congress intended.'" *Id*. at 545 (quoting relevant Senate report).

In short, "an agency . . . has a duty to construe a FOIA request liberally." *Nation*

*Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

Nonetheless, "an agency processing a FOIA request is not required to divine a

requester's intent." *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 64 (D.D.C.

2003).

FOIA does not set forth a general standard regarding how hard an agency must

look to find requested records. *Trentadue v. F.B.I.*, 572 F.3d 794, 797 (10th Cir. 2009).

Under Tenth Circuit law, "an agency's search for records need only be 'reasonable' in

scope and intensity." *Id.*

> In light of the reasonable-search requirement, the focal point
> of the judicial inquiry is the agency's search process, not the
> outcome of its search.  The issue is not whether any further
> documents might conceivably exist but rather whether the
> government's search for responsive documents was
> adequate, which is determined under a standard of
> reasonableness, and is dependent upon the circumstances
> of the case.

*Id.* (internal quotation marks omitted; alterations incorporated); *see also Meeropol v.*

*Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (recognizing that "a search need not be

perfect, only adequate, and adequacy is measured by the reasonableness of the effort

in light of the specific request").

To support the adequacy and reasonableness of its search process, an agency

may provide detailed affidavits or declarations showing the scope of its search. *See*

*Davis v. U.S. Dep't of Veteran Affairs*, 730 F. App'x 571, 573 (10th Cir. 2018).  "When

the agency has provided such affidavits, the nonmoving party must either produce

evidence contradicting the adequacy of the agency's search or evidence of the agency's bad faith." *Id.* "In the absence of countervailing evidence or apparent inconsistency of proof, such affidavits will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Trentadue*, 572 F.3d at 807 (quoting *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001)).

**B.      Adequacy of BLM's Search**

BLM contends that it is entitled to summary judgment because it has complied with the Prior Summary Judgment Order and conducted a search for records "reasonably calculated to retrieve all documents responsive to that Order." (ECF No. 44 at 1.) In particular, BLM contends that its search for records was reasonable because it undertook the multi-step search outlined in Ms. Garcia-Hinojosa's declaration,[6] which included:

1.      identifying the parcels which had been considered for the March 2018 lease sale but were not included in the Prior Searches;

2.      undertaking a review of documents that had been collected in the Prior Searches, but were not produced, to determine whether these records contained references to the New Parcels;

3.      tasking all of the custodians from its prior searches to conduct a search of its paper files, electronic files, and e-mail for documents reflecting the New Parcels that existed between January 1, 2017 and November 3,

---

[6]  The Court finds that Ms. Garcia-Hinojosa's declaration is detailed, nonconclusory, and reasonably describes BLM's search process. It is therefore entitled to a presumption of good faith. *See Trentadue*, 572 F.3d at 808 (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

10

2017;

4.      identifying newly-obtained documents to determine whether the these

documents referenced any other potential custodians that BLM had

missed; and

5.      tasking Mr. Shoop and Mr. Manning to conduct a search of their records

for documents reflecting the New Parcels.

(ECF No. 44 at 17–19.)

In response, Rocky Mountain Wild contends that BLM's renewed search was

"unreasonably narrow and did not use information known to the agency to identify and

disclose responsive documents."  (ECF No. 45 at 9.)  Specifically, it argues that BLM's

search of Mr. Shoop and Mr. Manning's records was unreasonable because it: (1)

"limited the scope of the search to records specifically referencing [the New Parcels]";

and (2) failed to search for records referencing search terms that BLM had used as part

of the Prior Searches.  (*Id.* at 10.)  According to Rocky Mountain Wild, if Mr. Shoop and

Mr. Manning had conducted a search utilizing the search terms from the Prior

Searches, BLM would have obtained additional records not captured by the latest

search.  (*Id.*)  The Court disagrees.

After dismissing Rocky Mountain Wild's other challenges to the Prior Searches,

the Court directed BLM to conduct the following search:

> BLM shall conduct a new search for records existing
> between January 1, 2017, and November 3, 2017, regarding
> parcels considered for the March 2018 lease sale, about
> which BLM has not already conducted a search.  BLM shall
> conduct this search and produce responsive documents on
> a schedule that permits it to file a new summary judgment
> motion (as to this search alone) no later than April 24, 2020.

11

(ECF No. 41 at 35.)  In other words, the Court ordered BLM to search for responsive documents existing between January 1, 2017 and November 3, 2017 regarding *only* the New Parcels.  Rocky Mountain Wild's contention that BLM was required to ask Mr. Shoop and Mr. Manning to search for documents referencing the search terms that BLM had used as part of the Prior Searches is contrary to the plain language of the Court's directive.[7]

However, even assuming that the Court's directive *could* be liberally construed to include tasking new custodians to search for records relating to the New Parcels *and* the Proposed Parcels, the Court finds that BLM's search was reasonable under the circumstances.  After all, the extensive record before the Court provides it with little reason to believe that either Mr. Shoop or Mr. Manning would have any responsive documents relating to the March 2018 lease sale that have not already been collected and produced.

Ms. Garcia-Hinojosa determined the search parameters for BLM's search for documents relating to the New Parcels after consulting with Mr. Joyner, Mr. Cowan, and Ms. Baca.  (ECF No. 44 at 3, ¶¶ 2–3.)  These are the agency employees with "comprehensive knowledge of the March 2018 lease sale" and who are the "most familiar with the nature, scope, and location of documents relating to this lease sale." (*Id.*)  She determined, based on these consultations, that: (1) aside from the 30 custodians who participated in the Prior Searches, "there were no additional custodians

---

[7]  The Court notes that Rocky Mountain Wild did not argue that BLM should have searched Mr. Shoop and Mr. Manning's records in the briefing for the prior summary judgment motion.  (ECF Nos. 36, 37.)

reasonably likely to have responsive records" (*id.* at 8–9, ¶¶ 27–29); and (2) after reviewing every individual identified in the 37 pages of newly collected responsive documents who had not been previously named a custodian, "it was unlikely that any of these [individuals] would have records additional to those already collected" (*id.* at 12, ¶¶ 46–47).  Thus, Ms. Garcia-Hinojosa's consultations revealed that it was unlikely that Mr. Shoop or Mr. Manning's records would contain responsive materials that have not already been produced.

Furthermore, the record belies BLM's speculation that undertaking a full search of Mr. Shoop and Mr. Manning's records would have uncovered additional documents. After all, when Mr. Shoop and Mr. Manning conducted a search for documents relating to the New Parcels, their responsive records were "*entirely duplicative of those [Ms. Garcia-Hinojosa] had already collected*" from the other 30 custodians.  (*Id.* at 12–13, ¶¶ 48–50 (emphasis added).)   Rocky Mountain Wild offers no reasonable reason to expect that a search of Mr. Shoop and Mr. Manning's records using the search terms from the Prior Searches would yield a different result.

It is conceivable that Mr. Shoop and Mr. Manning may have additional documents that have not been captured by the Prior Searches and BLM's search for records relating to the New Parcels.  However, "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate, which is determined under a standard of reasonableness, and is dependent upon the circumstances of the case." *Trentadue*, 572 F.3d at 797; *see SafeCard Servs., Inc.*, 926 F.2d at 1200 ("Agency affidavits are

afforded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.").

Based on the totality of the facts of this case, the Court concludes that BLM acted in good faith and expended extensive efforts to comply with Rocky Mountain Wild's FOIA request and the Court's directive.  Rocky Mountain Wild has not produced evidence contradicting the adequacy of BLM's search or evidence of BLM's bad faith.[8] Thus, the Court finds that BLM's search, which was reasonable in scope and intensity, complies with its FOIA obligations.

Accordingly, BLM is entitled to summary judgment as to the adequacy of its search.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendants' Renewed Motion for Summary Judgment (ECF No. 44) is GRANTED;

2.      Plaintiff's claims are dismissed with prejudice;

3.      Judgment shall enter in favor of Defendants United States Bureau of Land

Management and United States Department of the Interior and against Plaintiff

---

[8] In its response, Rocky Mountain Wild cites five documents which it asserts are "positive evidence of the inadequacy of BLM's searches."  (ECF No. 45 at 9.)  The Court disagrees.  At best, these documents demonstrate that Mr. Shoop and Mr. Manning may have some documents that are responsive to Rocky Mountain Wild's FOIA request.  However, Rocky Mountain Wild's evidence does not demonstrate that: (1) Mr. Shoop or Mr. Manning have documents that would not have been captured by the other custodians' searches; or (2) BLM has withheld responsive documents.  For example, the e-mail chain at ECF No. 45-4 includes Ryan Joyner, a BLM custodian whose records were already searched in connection with the Prior Searches and BLM's search for documents relating to the New Parcels.  (ECF No. 45-4; ECF No. 44 at 8–9, ¶¶ 27–34.)  The e-mails at ECF Nos. 45-1, 45-2, and 45-5 similarly include at least one custodian whose records were already searched in connection with Rocky Mountain Wild's FOIA request.

Rocky Mountain Wild, and Defendants shall have their costs upon compliance with

D.C.COLO.LCivR 54.1; and

4.      The Clerk shall terminate this action.

Dated this 30th day of December, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge